**FORM TO BE USED BY FEDERAL PRISONERS FOR FILING A PETITION FOR WRIT OF HABEAS CORPUS UNDER TITLE 28 U.S.C. § 2241**

## IN THE UNITED STATES DISTRICT COURT

### FOR THE  DISTRICT OF MASS.

Jack Ervan III, #12048-424
                    Petitioner
F.M.C., Devens

P.O. Box 879
Ayer, Ma. 01432
(Full name under which you were convicted;
Prison Number; Full Mailing Address).

**05 - 40101 RCL**

CIVIL ACTION NO._____

VS.

U.S. District Court of Mass.
                    Respondent(s)
1st Courthouse Way

Suite 2300

Boston, Ma. 02110
(Name of Warden or other authorized person
having custody of Petitioner).

**PLEASE COMPLETE THE FOLLOWING. READ THE ENTIRE PETITION BEFORE FILLING IT OUT.  ANSWER THOSE QUESTIONS WHICH PERTAIN TO YOUR TYPE OF CLAIM.**

1. This petition concerns:  (check appropriate blank)

_____    A conviction

___X___    A sentence  (**CAUTION:** If you are attacking a sentence imposed under a Federal Judgment, you
                    must file a direct motion under 28 U.S.C. § 2255 in the Federal Court which entered the
                    Judgment).

_____    Jail or prison conditions

_____    Prison discipline issue

_____    A parole problem

_____    Other.  State briefly: _____

_____

_____

2. Place of detention:  FEDERAL MEDICAL CENTER, DEVENS; P.O. BOX 879, AYER, MA.
    01432

_____

1

**HAVE YOU FILED PREVIOUS PETITIONS FOR HABEAS CORPUS MOTION UNDER TITLE 28 U.S.C. § 2255, OR ANY APPLICATIONS, PETITONS OR MOTIONS WITH RESPECT TO THIS CONVICTION?**

_____X_____ Yes        _____ No

3. If your answer is "yes," give the following information:

a. Name of the Court: U.S. DISTRICT COURT for the WESTERN DISTRICT OF WISCONSIN

b. Nature of proceeding: § 2255 MOTION

c. Grounds raised: VIOLATION OF SIXTH AMENDMENT; ineffective assistance of counsel and right to jury xxxxix ; VIOLATION OF FIFTH AMENDMENT, due process; and 2255 (4) that the movant wasn't time barred by the one year do to the exercise of due diligence.

d. Result: Order denying motion as untimely

e. Date of result: 4-28-2004

f. Citation or number of any written opinion or order entered pursuant to each such disposition: _____
99-CR-0106-03/04-C-0240-C

4. If you did not file a motion under section 2255 of Title 28 U.S.C., or if you filed a motion and it was denied, state why your remedy by way of such motion is inadequate or ineffective to test the legality of your detention: The proper vehicle for attacking the execution of sentence, is 28 USC 2241. That the conduct for which he is being held is no longer criminal or lawful due to a Supreme Court decision in U.S. v. Booker, that was rendered after the Petitioner's unsuccessful motion under 2255, and certification under 2255 is unavailable, by barred-AEDPA; to show actual innocence.

5. Does counsel presently represent you? _____ Yes ____X____ No

If so, Name address and phone number of counsel: _____
_____
_____

6. Name and location of court, which imposed sentence: U.S. DISTRICT COURT for the WESTERN DISTRICT OF WISCONSIN; P.O. Box 432, Madison, Wisconsin 53701 _____

_____

7. Indictment or case number, if known: __99-CR- 106-C__

8. Offense or Offenses for which sentence was imposed: __21 USC §846 & 18 USC §2__

9. Date upon which sentence was imposed and the term of the sentence: __8-31-2000; 240 months__

10. When was a finding of guilt made? (Check one)
_____ After a plea of guilty

____X____ After a plea of not guilty

_____ After a plea of Nolo Contendre

11. If you were found guilty after a plea of not guilty, was that finding made by:
____X____ A jury

_____ A judge without a jury

12. Did you appeal the judgment of the conviction or the imposition of a sentence? ____X____ Yes _____ No

13. If you did appeal, give the following information for each appeal:

a. Name of court: __UNITED STATES COURT of APPEALS for the SEVENTH CIRCUIT__

b. Result: __Dismissed__

c. Date of result: __10-6-2001__

d. Citation or number of opinion: __# 00-3347__

e. Grounds raised: (List each one)
__Violation of Fifth Amendment; due process. Violation of Sixth Amendment;__
__right to jury, and ineffectiveness of counsel (in regards to his Anders__
__brief).__

**NOTE: If you appealed more than once, attach an additional sheet of paper the same size, give all the information requested above in question number 13, a through e. DO NOT WRITE ON BACK OF PAGE.**

14. Summarize briefly the facts supporting each ground. If necessary attach a single page behind this page.

**CAUTION:** If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds at a later date.

a. Ground one: <u>Violation of the Fifth Amendment; right to due process</u>

Supporting Facts: (Tell your story BRIEFLY without citing cases or law. You are CAUTIONED that you must state facts not <u>conclusions,</u> in support of your grounds. E.g., who did exactly what to violate your rights at what time or place).

<u>Please see the following xxxxhxxxxxx attachments.</u>

b. Ground Two:

<u>Violation of the Sixth Amendment; right to jury (determination).</u>

Supporting Facts: <u>Please see the following attachments.</u>

Ground Three:

Supporting Facts:

15. If this petition concerns jail or prison conditions, prison discipline, a parole problem or other cause under 28 U.S.C. § 2241, answer the following:

a. Did you present the facts in relation to your present complaint in the internal prison grievance procedure?

_____ Yes _____ No

(1) If your answer to "a" above is yes, what was the result? _____
_____
_____

(2) If your answer to "a" above is no, explain: _____
_____
_____

b. Did you present your claim to the Bureau of Prisons or other federal agency for administrative action?

_____ Yes _____ No

(1) If your answer is "yes," state the date such claim was submitted and what action, if any has been taken: _____
_____

(2) If your claim has not been acted on, attach copies of any correspondence you have received from the Bureau of Prisons or other federal agency concerning you.

c. **STATEMENT OF CLAIM:** State here as briefly as possible the facts of your case. DO NOT give any legal arguments or cite any cases or any statutes. Attach extra pages of the same size to this page if more room is necessary. DO NOT write on the reverse side of this page.

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

**16. RELIEF:** state briefly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.

Relief is sought, for the execution of sentence, and/or a new trial, or whatever the court deems lawful, just and in good faith. In the alternative, xxxxxx ordering an expedited hearing on these matters and issues going to this Court's jurisdiction.

Signed on this the ___JUNE___ day of _____21_____, 200**5**.

_Jack Ervan III_
Signature of petitioner
Jack Ervan III, pro se

**I DECLARE (OR CERTIFY, VERIFY OR STATE) THAT THE FOREGOING IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE OR INFORMATION AND BELIEF AND THAT ANY FALSE STATEMENTS MADE THEREIN ARE MADE SUBJECT TO THE PENALTIES OF APPLICABLE LAWS RELATING TO UNSWORN FALSIFICATIONS TO AUTHORITIES.**

**Executed on:** ___JUNE___ _21_ ___, 200**5**.

_Jack Ervan III_
Signature of petitioner
Jack Ervan III, pro se

## CLAIM AND ARGUMENT

In United States v. Booker, 04-104 (2005), the Supreme Court announced a new ruling: [that] [a]ny fact (other than a prior con- viction) which is necessary to support the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to the jury beyond a rea- sonable doubt.

Thus, this new ruling being only retroactive to cases on direct review or not yet final. In which, such new ruling bar's any 'second or successive' motions under the Anti-Effective Death Penalty Act. Petitioner's direct appeal and first 2255 has been exhausted years before this new Supreme Court ruling were announced. And that, in light of this new ruling, Petitioner is barred under (AEDPA), to prove his actual innocence. In that, Petitioner never had a chance to raise the question "at issue in his appeal or his first 2255 petition, thus, not having a rea- sonable opportunity to prove his actual innocence on the exist- ing records, nor could he have raised this claim at an earlier time.

**(plurality opinion)** ("[A] case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final.") Blakley v. Washington, 542 U.S. _____ (2004) (O'Connor, J., dissenting).

The proper vehicle for attacking the execution of sentence, is U.S.C. § 2241. A writ of habeas corpus under the terms of that section, however, may be granted by district courts only "within their respective jurisdictions." Braden v. 30th Judicial Circuit Court, 410 U.S. 484, 93 S.Ct 1123, 35 L.Ed 2d 443 (1973). AEDPA generally does not apply to federal prisoner habeas corpus actions under 28 U.S.C. § 2241 (1994). **see INS v. St. Cyr. 121 S.Ct 2271, 2282 n.25 (2001)** ("text [of § 2241] remained undisturbed by either AEDPA or IIRIRA"), **Valona v. U.S., 138 F.3d 693, 694-95 (7th Cir. 1998); Bradshaw v. Story, 86 F.3d 164, 166 (10th Cir. 1996); Leyva v. Meissuner, 996 F.Supp. 831, 834 (C.D. Ill. 1998).** "A § 2241 motion would not be barred by the new restrictions on successive motions and petitions." Hanerd, at 123 F.3d 930. ("Section 2255 ...does not grant jurisdiction over a post conviction claim attacking the execution of sentence.") U.S. v. DiRusso, F.2d 673, 674-76 (1st Cir. 1970).

("As recognized in several recent decisions, in the circumstances where a petitioner claims that the conduct for which he is being held is no longer criminal due to a Supreme Court decision such as [Booker] that 2255, and certification under 2555 is unavailable, the remedy of 2255 is "inadequate or ineffective to test the legality of [the petitioner's] detention [and section 2241 remedy is available].") **Lee v. Wetzel, 49 F.Supp. 2d 875, 878 (E.D. La. 1999);** (because successive motions bar prevents movant from obtaining relief on Bailey claim, and because "serious constitutional questions would arise is a person who can prove his actual innocence on the existing record - and who could not have effectively raised his claim of innocence at an earlier time - had no access to judicial review, "section 2241 remedy is available; court must invoke residual section 2241 remedy whenever justice would seem to demand a forum for the prisoner's claim in

so pressing a fashion as to cast doubt on the constitutionality
of the law that would bar the § 2255 petition.") **Triestman v. U.S.,
125 F.3d 361, 363, 377 (2d Cir. 1997);** (7th circuit rejects Triest-
man standard as "too indefinite" and adopts rule that "Federal
prisoner should be  permitted to seek habeas corpus ⌊via section
2241⌋ only if he had no reasonable opportunity to obtain earlier
judicial correction of the fundamental defect in his conviction
or sentence because the law changed after his first 2255 motion.")
**In re Davenport, supra, 147 F.3d at 611;** (section 2241 remedy is
available for AEDPA - barred ⌊Booker⌋ claim because denial of
"avenue⌊s⌋ of judicial review...for a party who claims that s/he
is factually or legally innocent as a result of a previously un-
available statutory interpretaion...would [present]...a thorny
constitutional issue.") **Dorsainvil, 119 F.3d 245, 248 (3rd Cir.
1997);** ("We agree with the Davenport, Dorsainvil, and Triestman
court's that habeas corpus relief under 2241 remains available
for federal prisoners in limited circumstances-...⌊b⌋ut it is
not necessary in this case to articulate those circumstances pre-
cisely - we leave that task for another day...A claim of actual
innocence - defined as factual innocence; not mere legal insuff-
iciency - will have a mechanism for review.") **U.S. v. Barrett,
178 F.3d 34, 52 (1st Cir. 1999), cert. denied, 528 U.S. 1176
(2000);** "...habeas petitioner need not prove his innocence beyond
all doubt in order to reach the safe haven of the miscarriage
exception: it suffices if the petitioner can show a probability
that a reasonable jury would not have convicted but for the con-
stitutional violation." **see Murray, 477 U.S. 496, 106 S.Ct at
2649; Dubois, 55 F.3d 718 (1st Cir. 1995).**

Now that Booker, Blakley and Apprendi, apply to the federal
sentencing guidelines and that the guidelines are now advisory
under the discretion of the judges' and not bond by the mandatory
provisions of § 3553 (b). The question ⌊as a matter of constitu-
tional law⌋ to the court, is that; ' What sentence is applicable
in the Sentencing Guidelines for a unspecific amount. When a
jury returns a general verdict to a indictment that neither charged

any drug amounts or penalties under 841 (b), nor had a jury make
a specific finding as to drug quantity'.

     **In United States v. Promise, 255 F.3d 150 (4th Cir. 2001) (en
banc), cert. denied, 122 S.Ct 2296 (2002).** Promise, explained an
important principle evolving from the decision in pre-Apprendi,
530 U.S. 466 (2000): Where an indictment did not allege a specific
drug quantity, as in the present case, district court cannot impose
an enhanced sentence and, indeed, cannot rely on the twenty year
sentence in 21 U.S.C. 841 (B)(1)(c). A sentence can only be imposed
consistent with the applicable sentencing guidelines. **Benenhaley,
281 F.3d at 425-26. (Luttig, J., dissenting); also see Booker &
Blakley.** The district court lacked jurisdiction to sentence Peti-
tioner as the court did because the indictment did not charge a
specific drug quantity, and the jury did not find a specific drug
quantity, much less "in excess of 1.5 kilograms" beyond a reason-
able doubt. As judge Luttig correctly surmised, "the reasoning
of Promise applies not only to the statutory provisions of section
841, but also to the sentencing scheme superimposed by the Sent-
encing Guidelines." Id.

     Promise stated that, "Apprendi dictates that in order to
authorize the imposition of a sentencing exceeding the  maximum
allowable without a jury finding of a specific threshold drug
quantity, the specific threshold quantity must be treated as an
element of an aggravating drug trafficking offense." **255 F.3d at
156.** But under the U.S.S.G. § 2D1.1, the threshold quantity for
cocaine base is not 50 grams or even 5 grams, but rather 250 mg,
level 12. **See (U.S.S.G.).** In any event, it is not the 1.5 kilograms
for which the district court sentencing judge held Petitioner re-
sponsible for (that were neither in the indictment, nor proved
to the jury beyond a reasonable doubt) by defining the propoderance
of the evidence standard to support the judge's determination.
Which is now, as a matter of law, unconstituional and no longer
criminal for a defendant to be held responsible for acts deter-
mined by the court's, that was neither charged in the underlying
indictment, proved to the jury or admitted by the defendant by way

of plea of guilt. **see U.S. v. Booker; U.S. v. Blakley and all the
attachments.**

Under the guidelines as Judge Luttig cogently explained in
Benenhaley, Petitioner Ervan should have received an Offense Level
12, based on the absence in the indictment and of a jury finding
of drug quantity. Booker & Blakley,  states ground for time served.
Thus, in any case, not the twenty years under 841 (B)(1)(c). In
order for the judge to impose a sentence of 240 months, level 38,
for 1.5 kilograms or more, that amount must be alleged in the in-
dictment an a finding by the jury beyond a reasonable doubt or
a plea of guilt, must be made regarding the quantity of cocaine
base for which the court held Petitioner responsible for by a
proponderance of the evidence. 287 F.3d at 247, also see Booker
an Blakley.

Booker and Blakley, dictates that drug quantity is an element
of any crime charged under section 841. '[T]here is no constitut-
ional difference between the gradations of offenses that exist
within section 841 (B)(1)(c) by operation of the guidelines and
gradations of offenses the Promise majority created within section
841 as a whole." Benenhaley, 281 F.3d at 427 (Luttig, J., dis-
senting). And as judge Luttig points out, and the ensuring de-
cision in Ring, makes virtually indisputable, "[T]he Sixth
Amendment is no less offended by a judicially - imposed sentence
in excess of that authorized by ⌊the] Guidelines (based upon a
judicial finding of quantity), than by a sentence in excess of
that authorized by statute (based upon the same judicial finding
of quantity). The defendant has been equally deprived of his
right to jury trial in both circumstances." Id. at 247-48. Ring
unquestionably confirmed this principle in holding that aggra-
vating circumstances in a capital case that raise the maximum
sentence to death operates as elements of the offense and must be
found by a jury beyond a reasonable doubt.

The court has violated Petitioner's Sixth Amendment right to
jury; and Fifth Amndment right to due process, by sentencing
Petitioner for a charge that neither, were charged in the indictment,

[13]

admitted by the Petitioner by way of plea, or submitted to the jury
beyond a reasonable doubt. An indictment must charge a specific
quantity of a controlled substances if the prosecution seeks an en-
hanced sentence under 21 U.S.C. § 841 (b). **United States v. Cotton,
261 F.3d 397, 403-07 (4th Cir. 2001), rev'd on other grounds, 122
S.Ct. 1781 (2002).** Under Cotton, drug quantity must be treated as
an element of an aggravating drug trafficking offense and failure
to have the jury find this quantity beyond a reasonable doubt vio-
lates the Sixth Amendment. Accord **Ring v. Arizona, ____U.S.____
slip op. 23-27.** Where, as here, the district court does not charge
the jury to find a specific quantity of a controlled substance
and the jury returns only a general verdict, a sentence can only
be imposed under the guidelines. Such a result constitutes plain-
error because sentencing Petitioner Ervan to imprisonment for
a long term greater than that available for the charge found by
the jury beyond a reasonable doubt means he received a sentence
for which he was not convicted. **Cotton, 261 F.3d at 404; also
see Booker, 04-104 & Blakley.**

⌊841 (B)(1)(c)⌋, ...sentencing scheme violated the defendants
right to have a jury find existence of " 'any particular' " that
the law makes essential to his punishment. **Blakley, 542 U.S. at
____ (slip op., at 5).** That right is implicated whenever a judge
seeks to impose a sentence that is not soley based on "facts re-
flected in the jury verdict or admitted by the defendant." Id.,
at ____ (slip op., at 7) (emphasis deleted). Petitioner was charged
with conspiring to distribute an unspecified amount of cocaine
base, in regards of the government failing to allege an amount
that he intended to seek and, thus, hold the petitioner respon-
sible for. **see (attachment Opinion & Order).** Indeed, the jury wasn't
told to find any quantity, so the verdict only allowed the dis-
trict court to sentence him to the guidelines. Unquestionably,
section 841 (B)(1)(c) does not contain a mandatory minimum puni-
shment. Because it does not contain a mandatory minimum sentence.
A district court must impose a sentence within the guideline range
when a specific drug quantity is not found by the jury. **see Promise,
255 F.3d at 156; also see Booker, 04-104 (2005) an Blakley (2004).**

[14]

Section 841 (B)(1)(c) itself must be parsed into multiple offenses, and further, that some allegation regarding drug quantity more specific that merely 'a quantity' is now, as a matter of constitutional law, an element of such offense. The statutory language in section 841 (B)(1)(c) "dictates that a specific allegation of drug quantity is an element of every section 841 offense." Logically, then, an indictment that alleges only an unspecified quantity of cocaine base, like the present case, charges no offense under section 841 at all. **see (attachment of Indictment.)** Since the new rulings in Booker & Blakley, an the reaffirmed Apprendi; virtually every circuit has refused to consider what Congress meant in this provision when it defined the **elements** of section 841 offense. And this is important. If the elements of section 841 offenses are contained entirely within subsection (a), and the prescribed statutory maximum punishment for a violation of that subsection is Life, then the question of when judicial fact-finding can increase the applicable range of punishment for an offense, even within the range of penalties prescribed by statute, is squarely presented. **see (attachment Opinion & Order).** If on the other hand, drug quantity and type are elements of the offense, then Petitioner Ervan received a sentence which exceeded the maximum penalty for the offense for which the jury found him guilty. Either way, the statutory and constitutional questions presented are important.

Eventhough, the court's application of Apprendi was only dealing with the statutory maximum, and no relation to the applicable sentencing guideline range. Petitioner's sentence is still in violation under Blakley, Booker, the Fifth & Sixth Amendment. And that, the holding in the pre-Apprendi has been reffirmed in Booker, stating that: [a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to the jury beyond a reasonable doubt:' **Id. STEVENS, J., SLIP OP., at 20.** So the court err'd in sentencing Petitoner

to twenty years by way of proponderance of the evidence standard,
to a drug amount that were neither charged in the indictment nor,
proven to a jury beyond a reasonable doubt. In which, sentencing
Petitioner to a maximum of twenty years for an amount he never
was convicted for, is a constitutional violation, and thus, no
longer criminal for a defendant to **receive** enhanced sentences
by a judge's own fact finding. Unless, the defendant admit's by
way of plea of guilty or proven to a jury beyond a reasonable
doubt, in light of Blakley & Booker's, new constitutional ruling.

"[1]t is unconstitutional for legislature to remove from the
jury the assessment of facts that increase the prescribed range
of penalties to which a criminal defendant is exposed." **Apprendi
v. New Jersey, 530 U.S. 466, 490 (2000) (qouting Jones v. U.S.,
526 U.S. 227, 252-53 (1999)).** This means the legislature cannot
create a situation in which a mandatory minimum sentence is ap-
plicable where the quantity of drugs necessary to trigger this
minimum sentence is neither alleged in the indictment nor found
beyond a reasonable doubt. **United States v. Flowal, 243 F.3d
932, 937-38 (6th Cir. 2000).** "Aggravating factors, other than a
prior conviction, that increase the penalty from a nonmandatory
minimum sentence to a mandatory sentence, or from lesser to greater
minimum are now [under Booker] elements of the crime to be
charged and proved." **U.S. v. Ramirez, 242 F.3d 348, 351-52 (6th
Cir. 2001).**

In light of Booker and Blakley, any assessment of facts that
increases the prescribed range of penalties to which a criminal
defendant is exposed invokes the full range of constitutional
protections required for elements of the crime. It is no longer
possible that drug weight is merely a sentencing factor and that
a finding of an amount of cocaine base exposing a defendant to a
sentence of twenty years can be accomplished unless the amount is
alleged in the indictment and found beyond a reasonable doubt.
Surely there are  constitutional limits to the legislature's
ability simply to define a crime generally and then establish
penalties ranging from a probationary sentence to life in prison

[16]

(or even death) based only on facts neither submitted to the jury nor proved beyond a reasonable doubt. "One can imagine in the limits replacing the separate statutes for assualt and murder by a single statute in which the violator would be punished by probation if he committed an assualt that caused no injury at all and by death if the assualt consisted in the intentional killing of the victim." **United States v. Jackson, 207 F.3d 910, 920 (7th Cir.), vacated in part, 531 U.S. 953 (2000).**

## CONCLUSION

**WHEREFORE,** for the aforestated reasons, and in consideration
of the facts and legal authority set forth within Petitioner's
petition of § 2241 Habeas Corpus, Petitioner Ervan reppectfully
moves this Honorable Court to execute current sentence, and/or
grant a new trial, or in the alternative, order an expedited hear-
ing on these matters and issues going to this Court's jurisdiction,
in light, of Booker & Blakley.

Dated§ JUne _21_ , 2005

Respectfully Submitted:
/s/ _Jack Ervan III_
Jack Ervan III, pro se
Federal Medical Center
Box 879
Ayer, Ma. 01432
# 12048-424

cc: clerk

[18]

## Certificate of Service

**THIS IS TO CERTIFY,** that two copies and one original copy, of the foregoing Petition, was duly placed upon the following, by placing same enclosed envelope, postal pre-paid stamped, properly addressed in the Institutional Mailbox in Devens (F.M.C.), P.O. box 879, Ayer, Ma. 01432 or Officially mailed under the exclusive care and custody of the United States Postal Service.

Dated: June _21_ , 2005

Respectfully Submitted;

/s/ _Jack Ervan III_

Jack Ervan III, pro se
Federal Medical Center,
Box 879
Ayer, Ma. 01432
# 12048-424

cc: clerk

[19]

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

Oct 20    11 53 AM '99

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) INDICTMENT |
| | ) |
| ROBERT FLEMISTER, | ) Case 99 CR 106 -C |
| also known as "Corleone;" | ) 18 U.S.C. § 2 |
| TYRAE L. FORD, | ) 21 U.S.C. § 846 |
| also known as "Tap," "Ty," or "Marcellos;" | ) 21 U.S.C. § 861(a)(2) |
| JACK ERVAN III, | ) 21 U.S.C. § 856(a)(1) |
| also known as "BJ" or "Germaine;" | ) 21 U.S.C. § 841(a)(1) |
| DAVID E. MULLEN, | ) |
| also known as "Red;" | ) |
| LEROY RUSSELL, | ) |
| also known as "Gymshoe;" | ) |
| PRENTICE T. LEE, | ) |
| also known as "Black;" and | ) |
| SHUNTIA J. HOLLAND, | ) |
| also known as "Loco," "Tae," or "Dough Boy;" | ) |
| | ) |
| Defendants. | ) |



THE GRAND JURY CHARGES:

<u>COUNT ONE</u>

1.    From in or about November 1997, the exact date being unknown to the grand jury, to in or about April 1998, in the Western District of Wisconsin and elsewhere, the defendants,

ROBERT FLEMISTER
also known as "Corleone;"
TYRAE L. FORD
also known as "Tap," "Ty," or "Marcellos;"
JACK ERVAN III
also known as "BJ" or "Germaine;"
DAVID E. MULLEN
also known as "Red;"
LEROY RUSSELL
also known as "Gymshoe;"

Attachment

PRENTICE T. LEE
also known as "Black;" and
SHUNTIA J. HOLLAND
also known as "Loco," "Tae," or "Dough Boy,"

and others known and unknown to the grand jury, knowingly and intentionally

conspired: (1) to possess cocaine base with intent to distribute, and (2) to distribute

cocaine base, a Schedule II controlled substance, in violation of Title 21, United States

Code, Section 841(a)(1).

2.      It was part of the conspiracy that the defendants were members of the

Black Disciples ("BDs"). The BDs are a street gang from Chicago, Illinois. The BDs

engage in endeavors that include the illegal manufacture and distribution of cocaine

base.  The defendants' neighborhood was located on the south side of Chicago in the

vicinity of 45th & S. Vincennes Ave. The defendants called their neighborhood "The

Fifth Ward."

3.      It was further part of the conspiracy that the defendants decided to make

money by selling cocaine base in the Granada Way/Castille Avenue neighborhood in

Madison, Wisconsin [hereinafter referred to as Granada Way].

4.      It was further part of the conspiracy that the defendants arranged with

certain residents of apartments in the Granada Way neighborhood to sell cocaine base

from their apartments.  In exchange for this use, the defendants paid the residents in

the form of cocaine base.

5.      It was further part of the conspiracy that when more cocaine or cocaine

base was needed for resale, the defendants would obtain it by traveling back and forth

from Chicago, Illinois.

2

6.      It was further part of the conspiracy that the defendants used an apartment located at 2701 Granada Way, #5, as their home base. This apartment was used, for example, to cook cocaine into cocaine base, to cut up the cocaine base into saleable pieces known as "rocks," to package the rocks in individual baggies, and to store the reserve supply of cocaine base. This apartment was also used as a place to use and sell cocaine base.

7.      It was further part of the conspiracy that the defendants sold cocaine base from certain apartments and hallways in apartment buildings on Granada Way, as well as from parking lots next to and behind the apartment buildings on Granada Way, and on Granada Way itself.

8.      It was further part of the conspiracy that the defendants offered special sales on their cocaine base, including two-for-the-price-of-one deals called "double-ups."

9.      It was further part of the conspiracy that the defendants possessed and displayed firearms.

10.     It was further part of the conspiracy that the defendants used physical violence and the threat of physical violence to retain their drug market presence in the Granada Way neighborhood.

11.     It was further part of the conspiracy that the defendants used neighborhood drug users as middlemen to bring drug customers to the defendants. The users sometimes brokered the sale of cocaine base between customers and the defendants. At other times, the defendants consigned cocaine base to the users who sold the drugs and then paid the defendants for the drugs.

3

12.    It was further part of the conspiracy that the defendants hid the purposes

of the acts done in furtherance of the conspiracy by using girlfriends and juvenile

females to hold the defendants' cocaine base for short periods of time, and by using

cellular phones and pagers, to avoid detection by law enforcement authorities and

otherwise provide security to members of the conspiracy.

(All in violation of Title 21, United States Code, Section 846,
and Title 18, United States Code, Section 2).

## COUNT TWO

In or about mid-January 1998, in the Western District of Wisconsin and

elsewhere, the defendant,

### ROBERT FLEMISTER,
also known as "Corleone,"

who was at that time more than eighteen years of age, knowingly and intentionally used

L.L., a certain female known to the grand jury and then under eighteen years of age, to

assist in avoiding detection and apprehension for a Title 21 offense by federal, state,

and local law enforcement officials; namely, possession with intent to distribute cocaine

base, a Schedule II controlled substance.

(In violation of Title 21, United States Code, Section 861(a)(2)).

## COUNT THREE

In or about mid-January 1998, in the Western District of Wisconsin and

elsewhere, the defendant,

### TYRAE L. FORD,

also known as "Tap," "Ty," or "Marcellos,"

4

who was at that time more than eighteen years of age, knowingly and intentionally used S.H., a certain female known to the grand jury and then under eighteen years of age, to assist in avoiding detection and apprehension for a Title 21 offense by federal, state, and local law enforcement officials; namely, possession with intent to distribute cocaine base, a Schedule II controlled substance.

(In violation of Title 21, United States Code, Section 861(a)(2)).

## COUNT FOUR

In or about mid-January 1998, in the Western District of Wisconsin and elsewhere, the defendant,

JACK ERVAN III,
also known as "BJ" or "Germaine,"

who was at that time more than eighteen years of age, knowingly and intentionally used S.T., a certain female known to the grand jury and then under eighteen years of age, to assist in avoiding detection and apprehension for a Title 21 offense by federal, state, and local law enforcement officials; namely, possession with intent to distribute cocaine base, a Schedule II controlled substance.

(In violation of Title 21, United States Code, Section 861(a)(2)).

## COUNT FIVE

From in or about November 1997 through March 2, 1998, in the Western District of Wisconsin and elsewhere, the defendant,

5

TYRAE L. FORD,
also known as "Tap," "Ty," or "Marcellos,"

knowingly maintained a place at 2701 Granada Way, #5, Madison, Wisconsin, for the

purpose of manufacturing, distributing and using controlled substances; namely,

cocaine and cocaine base, both Schedule II controlled substances.

(In violation of Title 21, United States Code, Section 856(a)(1)).


COUNT SIX

On or about March 12, 1998, in the Western District of Wisconsin, the defendant,

SHUNTIA J. HOLLAND,
also known as "Loco," "Tae," or "Dough Boy,"

knowingly and intionally possessed with intent to distribute cocaine base, a Schedule II

controlled substance.

(In violation of Title 21, United States code, Section 841(a)(1)).


A TRUE BILL

_____
PRESIDING JUROR

_____
Peggy A. Lautenschlager
United States Attorney

Indictment returned: 10-20-99

6

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - -

UNITED STATES OF AMERICA,

Plaintiff,

v.

ROBERT FLEMISTER, TYRAE L.
FORD and JACK ERVAN III,

Defendants.

OPINION AND
ORDER

99-CR-0106-C

- - - - - - - - - - - - - - - - - - - - - - - - - - - -

This criminal case is before the court following a jury trial in which defendants Robert

Flemister, Tyrae L. Ford and Jack Ervan III were found guilty of conspiring to distribute

cocaine base and possess cocaine base with intent to distribute, in violation of 21 U.S.C. §

841(a) and 18 U.S.C. § 2. The indictment did not charge them with any particular amount

of cocaine and the jury was not asked to determine the amount of cocaine for which they

should be held accountable for sentencing purposes. After the trial and prior to sentencing,

the United States Supreme Court decided Apprendi v. New Jersey, 120 S.Ct. 2348 (2000),

holding that the due process clause requires that any factual determination that authorizes

an increase in the maximum prison sentence for an offense be made by a jury on the basis

1

Copy of this document has been
provided to: Vaudreuil, Hoag
Mandell, Bates, Deft, USPO, SLC
this 25th day of Aug 20 00
by C.A. Korth
C.A. Korth, Secretary to
Magistrate Judge Crocker

Attachment

of proof beyond a reasonable doubt. Citing Apprendi, defendants have asked for a determination by the court that they cannot be sentenced to more than 20 years in prison, reasoning that because the government did not charge them with distributing 50 grams or more of cocaine base, they cannot be sentenced to more than the maximum sentence of 20 years provided for distributing less than 50 grams. I conclude that defendants are correct and that, in light of Apprendi, their potential sentences are capped at 20 years.

Congress structured 21 U.S.C. § 841 in two parts. The first, subsection (a), describes certain prohibited criminal acts (manufacturing, distributing, dispensing a controlled substance or possessing a controlled substance with the intent to do any of these things). The second, subsection (b), sets out the penalties prescribed for these acts, which vary depending on the amounts of controlled substances involved, whether the defendant has prior convictions and whether death or serious bodily injury resulted from the use of the substance. Until Apprendi was decided, it was common practice for prosecutors to charge and prove only the acts prohibited under § 841(a). At sentencing, the court would consider the factors in § 841(b), applying a preponderance of the evidence standard in determining the amount of drugs to attribute to the defendant. After Apprendi, prosecutors will have to submit the determination of drug quantities to the jury whenever they believe that the defendant distributed a larger quantity of drugs than the statutory minimum would cover.

The question is what to do in a case like this in which the trial has been held and the

government is unable to ask a jury to determine how much cocaine base defendants conspired to distribute or possess with intent to distribute. The government contends that defendants should be sentenced on the basis of 50 grams or more of cocaine base although no jury has ever found that defendants conspired to distribute or possess this amount of cocaine. It maintains that it was a constitutional error to fail to ask the jury to make a determination of the amount of cocaine base involved but that the error is harmless in light of the extensive evidence introduced at trial that defendants dealt in far more than 50 grams. Defendants maintain that Apprendi limits their potential sentences to 20 years, the maximum available when the amount of cocaine base is less than 50 grams, because the jury was never presented with any other charge and never had any occasion to consider the larger amount. They view the government's omission as a structural error to which the doctrine of harmless error has no application.

Whether or not the government's omission is viewed as a structural error, as I think it should be, defendants have the better argument. The failure to charge defendants with possessing 50 grams or more of cocaine is not the kind of error that fits readily into the concept of harmless error discussed in Neder v. United States, 527 U.S. 1 (1999), or Chapman v. California, 386 U.S. 18 (1967). In Neder, a case involving tax offenses, the Court concluded that it was harmless error when a judge failed to submit to the jury the issue of the materiality of allegedly false statements on the tax returns. In the Court's view, the

3

error was not so intrinsically harmful as to require automatic reversal without regard to its effect on the outcome of the trial. See Neder, 527 U.S. at 7. In other words, the error did not fall into the limited class of fundamental constitutional, or "structural errors," which encompasses cases in which there is a defect "'affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself.'" Id. at 8 (quoting Arizona v. Fulminante, 499 U.S. 279, 310 (1991)). In Chapman, 386 U.S. 18, the question was whether a constitutional error could ever be considered harmless. The Court held that although "there are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error," id. at 23, other constitutional errors "in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction." Id. at 22. The Court concluded that the state's repeated references to defendants' failure to testify fell into the second category but only if the court could "declare a belief that the error was harmless beyond a reasonable doubt." Id. at 24. Since it could not make such a finding, it reversed defendants' convictions.

Defendants have a different sort of case. They are not arguing that the government erred in any respect during the trial, that it omitted any element of the offense it had charged against defendants, that it tendered an improper instruction or commented improperly upon defendants' failure to testify. Their argument is that the government

4

brought the wrong charge against defendants. This does not strike me as the sort of situation in which harmless error analysis is appropriate. The constitutional safeguards that surround the bringing of a defendant to trial, the right to be tried only by an indictment returned by a grand jury, the right to notice of the charge and the opportunity to defend are not so unimportant and insignificant as to be relegated to the potentially harmless error category. Courts have never allowed prosecutors to amend indictments in the middle of trial to add increased charges, yet this is what the government is seeking in this case, if only because it is forced to do so by the decision in Apprendi.

I recognize that other courts have taken a different approach to the problem, although the published cases concern cases on appeal or on a collateral challenge to a previously imposed sentence. See, e.g., Sustache-Rivera v. United States, No. 99-2128, 2000 WL 1015879 (1st Cir. July 25, 2000) (attempted collateral challenge to increased sentence for carjacking on ground that judge and not jury made finding that "serious bodily injury" was involved; court held that defendant failed to show cause and prejudice for failure to raise issue when filing first post-conviction motion because evidence of serious bodily injury (multiple gunshot wounds to victims, one of whom lost his leg as a result) was so overwhelming); United States v. Sheppard, No. 00-1218, 2000 WL 988127 (8th Cir. July 18, 2000) (court's failure to instruct jury it must find drug quantity was harmless error in view of fact that court submitted "Special Finding" to jury on which jury found beyond

5

reasonable doubt that conduct involved more than 500 grams of methamphetamine).  Cf. United States v. Murphy, No. 4-95-1038DSDFLN, 2000 WL 1140782 (D. Minn. Aug. 7, 2000).  In Murphy, the district court vacated the defendant's sentence, which had been imposed under § 841(b)(1)(A), and resentenced him to the much lower statutory maximum in § 841(b)(1)(C) because the government had not charged a specific amount of drugs or proved to the jury that defendant had possessed or distributed 50 grams or more of cocaine. Although defendant brought his challenge on a post-conviction motion, the court read Apprendi as having retroactive application because the rule required observance of "those procedures that . . . are 'implicit in the concept of ordered liberty.'"  Id. at *4 (quoting Teague v. Lane, 489 U.S. 288 (1989)).

Even if a harmless error analysis were appropriate when the government is seeking a higher statutory sentence than it sought in the indictment, it would not be appropriate in this particular case.  It is true that there was extensive testimony about amounts of cocaine base that witnesses had seen in the possession of these defendants and their co-defendants. However, the credibility of those witnesses was very much in doubt, as shown by the jury's decision to return not guilty verdicts against three of the men tried with these defendants. To make the finding the government asks would require me to make credibility determinations that are the province of the jury.  Without making those determinations, I cannot say that the government could prove that the evidence was so overwhelming that no

6

reasonable jury could have failed to find more than 50 grams of cocaine base attributable to defendants. Contributing to my reluctance to make this finding is the fact that defendants were not on notice that they should or could put in evidence on drug quantities.

The fact that the critical drug quantity evidence in this case is so bound up with witness credibility distinguishes it from <u>Neder</u>, 527 U.S. 1, where there was no disagreement that the false statements on the tax returns were material, and from <u>Sustache-Rivera</u>, 2000 WL 1015879, where it was beyond dispute that the carjacking victims had been severely injured. In this case, I cannot say as a matter of law that no jury could fail to find beyond a reasonable doubt that defendants were responsible for 50 grams or more of cocaine base.

ORDER

IT IS ORDERED that the potential sentences of defendants Robert Flemister, Tyrae L. Ford and Jack Ervan III are capped under 21 U.S.C. § 841(b)(1)(C) at twenty years.

Entered this _____25th_____ day of August, 2000.

BY THE COURT:

BARBARA B. CRABB
District Judge

7

# United States District Court

## Western District Of Wisconsin

*337*

| | |
|---|---|
| UNITED STATES OF AMERICA | JUDGMENT IN A CRIMINAL CASE |
| | (For offenses committed on or after November 1, 1987) |
| v. | Case Number: 99-CR-106-C-03 |
| JACK ERVAN, III | Defendant's Attorney: ALAN BATES |

The Defendant, Jack Ervan, III, was found guilty on count 1 of the indictment.

The defendant was found not guilty on count 4 of the indictment.

| Title & Section | Nature of Offense | Date Offense Concluded | Count Number(s) |
|---|---|---|---|
| 21 U.S.C. § 846 and 18 U.S.C. § 2 | Conspiracy to Possess Cocaine Base with Intent to Distribute and to Distribute Cocaine Base, a Schedule II Controlled Substance; a Class C Felony | April 1998 | 1 |

The defendant is sentenced as provided in pages 2 through 7 of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

IT IS FURTHER ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.

| | |
|---|---|
| Defendant's Date of Birth: | February 7, 1979 |
| Defendant's USM No.: | 12048-424 |
| Defendant's Residence Address: | 2310 West 55th Street Chicago, IL 60609 |
| Defendant's Mailing Address: | c/o Dane County Jail 210 Martin Luther King Jr. Blvd. Madison, WI 53709 |

August 31, 2000
Date of Imposition of Judgment

*Barbara B. Crabb*
Barbara B. Crabb
District Judge

*Sept. 5, 2000*
Date Signed:

Attachment

# IMPRISONMENT

Defendant is hereby committed to the custody of the United States Bureau of Prisons for imprisonment for a period of 20 years as to count 1.

The Court makes the following recommendations to the Bureau of Prisons:

It is recommended that defendant be afforded the opportunity to participate in substance abuse education and treatment programs during the term of confinement and that he spend the last 120 days of his sentence in a community corrections center with work release privileges.

# RETURN

**I have executed this judgment as follows:**

_____

_____

_____

Defendant delivered on _____ to _____

at _____, with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
Deputy Marshal

App. 8

# SUPERVISED RELEASE

Upon release from imprisonment, defendant shall be on supervised release for a term of three years as to count 1.

Defendant shall report to the probation office in the district to which defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

Defendant shall not commit another federal, state, or local crime.

Defendant shall not illegally possess a controlled substance.

If defendant has been convicted of a felony, defendant shall not possess a firearm or destructive device while on supervised release.

If this judgment imposes a fine or a restitution obligation, it shall be a condition of supervised release that defendant pay any such fine or restitution that remains unpaid at the commencement of the term of supervised release in accordance with the Schedule of Payments set forth in the Financial Penalties sheet of this judgment.

Defendant shall comply with the standard conditions that have been adopted by this court (set forth on the next page).

Defendant shall also comply with the following special conditions:

(1)  Provide financial information to the supervising U.S. probation officer as directed;

(2)  Register with local law enforcement agencies and the state attorney general as directed by the supervising U.S. probation officer;

(3)  Not associate with or belong to a street gang;

(4)  Allow searches by the supervising U.S. probation officer of any residence or property under defendant's control where there is reason to believe defendant is in possession of illegal narcotics, stolen materials, firearms or other contraband and permit confiscation of any contraband materials; and

(5)  Abstain from the use of alcohol and from the use of illegal drugs and from association with drug users and sellers and participate in substance abuse treatment and testing as directed by the supervising U.S. probation officer.

App.9

# STANDARD CONDITIONS OF SUPERVISION

1)  Defendant shall not leave the judicial district without the permission of the court or probation officer;

2)  Defendant shall report to the probation officer as directed by the court or probation officer and shall submit a truthful and complete written report within the first five days of each month;

3)  Defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4)  Defendant shall support his or her dependents and meet other family responsibilities;

5)  Defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons;

6)  Defendant shall notify the probation officer within seventy-two hours of any change in residence or employment;

7)  Defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute or administer any narcotic or other controlled substance, or any paraphernalia related to such substances except as prescribed by a physician;

8)  Defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9)  Defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;

10) Defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view by the probation officer;

11) Defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12) Defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;

13) As directed by the probation officer, defendant shall notify third parties of risks that may be occasioned by defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm defendant's compliance with such notification requirement.

# CRIMINAL MONETARY PENALTIES

Defendant shall pay the following total financial penalties in accordance with the schedule of payments set forth below.

| Count | Assessment | Fine | Restitution |
|-------|------------|------|-------------|
| 1 | $100.00 | $0.00 | $0.00 |
| Total | $100.00 | $0.00 | $0.00 |

As to count 1 of the indictment, it is adjudged that defendant is to pay a $100 criminal assessment penalty to the Clerk of Court for the Western District of Wisconsin immediately following sentencing. Defendant does not have the financial means to pay a fine.

## RESTITUTION

# SCHEDULE OF PAYMENTS

Payments shall be applied in the following order:

         (1) assessment;
         (2) restitution;
         (3) fine principal;
         (4) cost of prosecution;
         (5) interest;
         (6) penalties.

The total fine and other monetary penalties shall be due in full immediately unless otherwise stated elsewhere.

Unless the court has expressly ordered otherwise in the special instructions above, if the judgment imposes a period of imprisonment, payment of monetary penalties shall be due during the period of imprisonment.

App. 12

# STATEMENT OF REASONS

I adopt the amended guideline calculations prepared by the probation office using the 1998 guidelines manual. All of defendant's relevant conduct is embodied in count 1 of the indictment for which he was found guilty. Defendant's relevant conduct is defined in § 1B1.3 and involved in excess of 1.5 kilograms of cocaine base, placing the base offense level at 38. Under § 2D1.1(b)(1), two levels are added because defendant possessed a dangerous weapon. Defendant used a person younger than 18 years of age to commit the offense; therefore, two levels are added pursuant to § 3B1.4. Defendant does not qualify for a downward adjustment for acceptance of responsibility under § 3E1.1 because he took his case to trial on the issue of factual guilt.

Pairing the total offense level of 42 with criminal history category I results in a guideline imprisonment range of 360 months to life. However, the guideline range is restricted by the statutorily authorized maximum sentence to a term of 20 years. A sentence at the restricted range will hold defendant accountable for his criminal conduct, serve as a general deterrent and protect the community.

| Guideline Range Determined by the Court: | |
| --- | --- |
| Total Offense Level: | 42 |
| Criminal History Category: | I |
| Imprisonment Range: | 360 to life |
| Supervised Release: | 2 to 3 years |
| Fine Range: | $25,000.00 to $1,000,000.00 |
| Restitution: | N/A |

App. 13

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

UNITED STATES OF AMERICA,

               Plaintiff,         Criminal Case 99-CR-0106-C-01
                                 Criminal Case 99-CR-0106-C-02
    VS.                      Criminal Case 99-CR-0106-C-03

ROBERT FLEMISTER,              Madison, WI
TYRAE L. FORD,                 August 31, 2000
JACK ERVAN, III,              1:30 p.m.
           Defendants.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

STENOGRAPHIC TRANSCRIPT OF SENTENCING HEARINGS
HELD BEFORE THE HONORABLE BARBARA B. CRABB

APPEARANCES:

For the Plaintiff:     Office of the United States Attorney
                         BY:  JOHN VAUDREUIL
                              LAURA PRZYBYLINSKI FINN
                        Assistant United States Attorneys
                        City Station, Suite 200
                        660 West Washington Avenue
                        Post Office Box 1585
                        Madison, WI 53701-1585

For the Defendant:     Sedor & Hoag, S.C.
(Robert Flemister)     BY:  JACK C. HOAG
                        111 North Main Street
                        Janesville, WI 53545

For the Defendant:     Mandell, Ginsberg & Meier
(Tyrae L. Ford)        BY:  DAVID L. MANDELL
                        306 East Wilson Street
                        Post Office Box 2095
                        Madison, WI 53701

*NANCY SCHELL*
*Official Court Reporter*
*United States District Court*
*120 North Henry Street*
*Madison, Wisconsin 53703*
*1-608-255-3821*

Attachment

1          MR. MANDELL:  Okay.

2          DEFENDANT FORD:  That is running concurrent with my

3   already sentence?

4          THE COURT:  Correct, running at the same time.

5          MR. MANDELL:  Thank you.

6          THE COURT:  Mr. Mandell, if you are about to leave, I

7   did want to take the opportunity to thank you and Mr. Hoag and

8   Mr. Bates also for your work that you have done in this case.

9          MR. MANDELL:  It's been a long and hard fight.  Thank

10  you, Your Honor.

11         THE COURT:  Mr. Bates, if you would like to move

12  over.

13         MR. BATES:  Fine.

14         THE COURT:  Okay, I'm going to move this sign too.

15    Mr. Ervan, I want to make sure that you, too, understand

16  that you have the right to appeal from your conviction and

17  your sentence.

18         DEFENDANT ERVAN:  Yes.

19         THE COURT:  And that Mr. Bates is obligated to

20  continue to represent you at government expense unless he

21  would be relieved of that obligation by the Court of Appeals.

22  Do you understand that?

23         DEFENDANT ERVAN:  Yes.

24         THE COURT:  Okay, and Mr. Ervan, have you read the

25  presentence report in your case and the addendum?

App. 15

1          DEFENDANT ERVAN:  Yes.

2          THE COURT:  And is there anything in there that you

3    have an objection to that hasn't been raised on your behalf by

4    Mr. Bates?

5          DEFENDANT ERVAN:  No, my lawyer covered it.

6          THE COURT:  Mr. Bates, for the record you have read

7    the presentence report and the addendum?

8          MR. BATES:  Yes.

9          THE COURT:  Okay.  What objections do you have that

10   you wish to pursue at this time?

11         MR. BATES:  They would be the same dealing with

12   quantity and the use of a weapon, Your Honor.

13         THE COURT:  Do you want to say anything further about

14   those?

15         MR. BATES:  Yes, Your Honor.  I'm referring to the

16   defendant's objections to the presentence report to begin

17   with.

18     I guess our approach is a little different than the other

19   two defendants in terms of drug quantity.  Our theory is that

20   the government has not proved a drug quantity at all, and our

21   basis for that argument is that they are relying on two prongs

22   to prove drug quantity.  One is testimony at the trial and the

23   other are the statements they provided the Court from

24   Mr. Flemister and Mr. Ervan.

25     I won't go over the argument on the statements any more

1  than to say that our position is the same.  That the
2  statements were given to curry favor with the government and
3  weren't necessarily given for the truth of the matter and are
4  not the position of my client at this time.

5      With regard to the testimony given at trial, the Court can
6  see and will recall that the issue of credibility of the
7  witnesses was hotly contested.  I think a lot of the witnesses
8  dramatically overstated certain facts of the case and we
9  were -- two aspects hindered the defendant in that situation.
10  One is we were not allowed, as mentioned earlier, to cross-
11  examine witnesses on the issue of the Dwight Turner case which
12  might have affected the ability to impeach their credibility
13  on the issue of drug quantity.  And, second, the Court noted
14  in its decision regarding the Apprendi case we were not on
15  notice at the time of the trial they were contesting the issue
16  of drug quantity.  And so that wouldn't have been relevant at
17  that time, so today is the day we would contest drug quantity.
18  But we don't have the witnesses who testified at the trial
19  here to do the same thing.  So now all we are left with really
20  that the government is proving drug quantities is prior
21  statements given by Mr. Flemister and Mr. Ervan.  I don't
22  think those are sufficient for the Court to find by the burden
23  of proof that is necessary that the government has proved its
24  case.

25      Again, as the Court said in its decision and order of

1 August 25, the critical drug quantity evidence in this case is
2 so bound up with witness credibility distinguishes this case
3 from the Neder case you were talking about in that matter.

4      So I don't think we have had a full airing of that issue
5 and I think that, therefore, the government has failed on the
6 burden of proof on the issue of drug quantity and I think
7 that, therefore, takes us out of the drug quantity tables in
8 terms of where we are on sentencing in this case.  And I was
9 trying to find out what happens if you're not in the drug
10 quantity tables and all I could come up with is I believe
11 there's a minimum mandatory sentence in this case of 10 years.
12 So I started out with 10 years instead of drug quantity tables
13 that is the base and then tried to decide whether or not there
14 were enhancers that would apply there.

15      As you will notice from our objections, we did not contest
16 the issue of the enhancement for using the juvenile even
17 though my client was found not guilty of a related offense in
18 that case.  We do contest the issue of the weapons as an
19 enhancer.  Again, looking at our objections to the presentence
20 report, the references throughout the trial regarding a weapon
21 and Mr. Ervan are few and scattered.  There is no allegation a
22 weapon was ever involved in any drug transaction.

23 Paragraph 14 of the original presentence report summarized the
24 evidence about a weapon in this case and it talks about Nicol-
25 Underhill seeing Defendant Ford.  It talks about Ford taking

App. 18

1 out cash, cocaine and guns.  The first reference to Ervan is

2 Tyrone Young overheard Ford and Ervan talking about firearms.

3 Nothing more concrete than talking about it.  Ervan offered to

4 get a .38 for Ford, but Ford said he didn't need one.  So we

5 don't have Ervan obtaining a gun in that situation.

6      Ervan told Shuretha Turner, who certainly had credibility

7 issues, that he was going to drop money off and get some

8 scrap, and Shuretha Turner's testimony was scrap meant a

9 weapon.  We certainly contest that.

10      The only thing in Paragraph 14, which is a direct

11 reference to Mr. Ervan and handguns, is a reference to

12 Ms. Vanessa Mitchell who did not testify at trial and who is

13 not here today and whose statements we do not have as evidence

14 today.   I think there is an utter lack of proof with regard --

15 by the government with regard to my client having a weapon as

16 an enhancer in this case.

17      It is our position, therefore, that with a criminal

18 history category of one my client should be in the range of

19 135 to 168 months rather than the 20 years.  Thank you.

20           THE COURT:  Thank you.  Mr. Vaudreuil.

21           MR. VAUDREUIL:  I'm not going to repeat what I

22 already said, mercifully so I suppose.  I do believe the trial

23 testimony is sufficient at the sentencing stage by a

24 preponderance of the evidence to establish the conspiracy of

25 which Mr. Ervan was a member.  That the amount of crack

56

1   cocaine distributed was in excess of 1.5 kilograms and was
2   reasonably foreseeable to him.  I think, and I won't repeat
3   what I said, these statements he made to law enforcement and
4   the statements Mr. Flemister made to law enforcement about
5   Mr. Ervan and about each other, I think are statements that at
6   least to a certain extent were credible on certain areas and I
7   think their involvement, perhaps still minimized, was at least
8   truthful as far as it went.

9       Regarding the gun, frankly, even if it was just Mr. Ford
10  and even if Mr. Bates would concede that the evidence
11  established Mr. Ford had a gun, all of the testimony shows and
12  Mr. Ervan's own statement shows a very, very close
13  relationship, much to his detriment it would appear, with
14  Mr. Ford.  And knowing that Mr. Ford was in the possession of
15  a gun, the testimony that he was having discussions with
16  Mr. Ford about guns, certainly makes it reasonably
17  foreseeable.

18      The application also calls for the Court to make a finding
19  that the gun enhancement is applicable unless it's clearly
20  improbable the gun was involved in a conspiracy in a criminal
21  offense.  There is no evidence -- the evidence I think
22  establishes the offense, what the defendants were here for,
23  Mr. Ervan included.  At least their major purpose was to sell
24  crack cocaine and the gun would be part and parcel to that.
25      In addition, Mr. Ervan's November 22nd statement, he talks

1  about Mr. Flemister having a gun, Mr. Lee having a nine
2  millimeter, Mr. Ford having a .45, Mr. Mullen also having a
3  380 handgun.  So I think the evidence is sufficient by a
4  preponderance of the evidence to establish both the base
5  offense level and the gun enhancement.  Thank you.

6          THE COURT:  Thank you.  And I am prepared to find
7  that there was more than one and a half kilograms of cocaine
8  base involved in this conspiracy and it was reasonably
9  foreseeable to Mr. Ervan who was deeply involved in the
10  conspiracy and close to Mr. Ford, and I also find by a
11  preponderance of the evidence that Mr. Ervan possessed a
12  dangerous weapon and that it was in connection with the drug
13  distribution.  As well as that he used a person younger than
14  18 to commit the offense.

15      Mr. Ervan, is there anything you would like to say on your
16  own behalf?

17          DEFENDANT ERVAN:  No.

18          THE COURT:  Mr. Bates, anything you would like to say
19  on Mr. Ervan's behalf?

20          MR. BATES:  Nothing more than at the appropriate time
21  we would, again, as the other defendants have, request that
22  the references to Dwight Turner's murder be stricken and he
23  does request if possible a placement at Pekin, which is near
24  his home.

25          THE COURT:  We will pass that request along to the

App.21

58

1   designator.  Thank you.  The motion to remove the references
2   to the murder is granted.

3       Mr. Vaudreuil, any comments about the sentence?

4       MR. VAUDREUIL:  No, Your Honor.  Not in addition to
5   what I have already said.

6       THE COURT:  Okay.  Mr. Ervan, I am adopting the
7   amended guideline calculations that were prepared by the
8   probation office using the 1998 manual.  Your relevant conduct
9   is embodied in Count 1 of the Indictment on which you were
10  found guilty.  Your relevant conduct involved more than one
11  and a half kilograms of cocaine base so your base offense
12  level is 38.  I added two levels because you possessed a
13  dangerous weapon and two more levels because of your use of a
14  person under 18 to commit the offense.  There is no downward
15  adjustment for acceptance of responsibility because you took
16  your case to trial.

17      Pairing the total offense level of 42 with criminal
18  history category one results in a guideline imprisonment range
19  of 360 months to life.  However, the guideline range is
20  restricted by the statutorily authorized maximum sentence to a
21  term of 20 years.  A sentence at the restricted range will
22  hold you accountable for your criminal conduct, serve as a
23  general deterrent and protect the community.

24      As to Count 1 of the Indictment, it is adjudged that you
25  are to pay a $100 criminal assessment penalty to the Clerk of

1      Anything further in this matter?

2              MR. BATES:  No, Your Honor.

3              MR. VAUDREUIL:  No, Your Honor.

4              THE COURT:  All right, Court will recess until 4

5  o'clock.

6          (At 3:10 p.m. the proceedings were adjourned.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

I CERTIFY THAT THE FOREGOING IS
A CORRECT TRANSCRIPT FROM THE
RECORD OF PROCEEDINGS IN THE
ABOVE-ENTITLED MATTER.

*Nancy Schell*        10-4-00
OFFICIAL COURT REPORTER        DATE

App. 23